# In the United States Court of Federal Claims

No. 25-2191
(Filed: October 23, 2026)

* * * * * * * * * * * * * * * * * * * * * * * * * * *

TELOS CORPORATION,

*Plaintiff*,

v.

THE UNITED STATES,

*Defendant*.

* * * * * * * * * * * * * * * * * * * * * * * * * * *

*C. Peter Dungan*, Washington, DC, for plaintiff, with whom were *Cameron S. Hamrick*, Washington, DC, of counsel, and *Hilary S. Cairnie*, Washington, DC, and *Bonnie S. Gill*, Richmond, VA, counsel for BFNA.

*Nathanael B. Yale*, Trial Attorney, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, DC, with whom were *Brett A. Shumate*, Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Eric P. Bruskin*, Assistant Director, for defendant.

OPINION

BRUGGINK, *Senior Judge*.

This is an action brought by plaintiff, Telos Corporation ("Telos"), a government contractor, on behalf of Bank Financial, NA ("BFNA"), a purported assignee, pursuant to the Contract Disputes Act ("CDA"). 41 U.S.C. §§ 7101-7109. The government has moved to dismiss this action on two separate grounds.

First, the government argues this court lacks subject matter jurisdiction because the action is predicated on assignments that violate the Anti-Assignment Act. Second, the government contends that plaintiff's complaint fails to state a claim upon which relief can be granted because the Anti-Deficiency Act prohibits the type of contractual obligation that Telos alleges.

Briefing is complete, and oral argument was held on September 10, 2026. For the reasons set out below, we grant the government's motion to dismiss for lack of subject matter jurisdiction.

## BACKGROUND[1]

While plaintiff's action centers on a Delivery Order that the United States Air Force ("USAF") awarded plaintiff, critical to this case are a series of transactions surrounding the Delivery Order. Because three of the transactions on their face purport to transfer interests in the Delivery Order, we treat those transactions as assignments, any of which could run afoul of the Anti-Assignment Act. 41 U.S.C. § 6305; 31 U.S.C. §3727.

### I. Award of the Delivery Order between Telos and the USAF

On September 20, 2022, the USAF issued Request for Quote ("RFQ") FA8771-22-Q-0045 for UiPath software licenses to support the Robotic Process Automation Center of Excellence Enterprise program management office.[2] Compl. ¶ 12; Ex. 7 at 1. The RFQ identified a four-month base period of performance from September 29, 2022, to January 29, 2023, and three one-year option periods that would end on January 29, 2024, January 29, 2025, and January 29, 2026, respectively. Compl. ¶ 16; Ex. 7 at 2, 12. Across all periods, the RFQ required licenses for a total of 17,000 end users.[3] Compl. ¶ 16; Ex. 7 at 2, 12.

In response to the RFQ, Telos submitted a final quote on September 29, 2022. Ex. 8 at 6; Compl. ¶ 18. Telos offered to provide the licenses for the four-month base period and the three one-year option periods in exchange

[1] The facts are drawn from the complaint and its attached exhibits.

[2] It appears the USAF amended the RFQ on September 22, 2022, to extend the deadline. Ex. 7 at 1, 11.

[3] The base period required licenses for 2,500 end users; the first option period required licenses for an additional 2,500 end users; the second option period required licenses for an additional 4,500 end users; and the third option period required licenses for an additional 7,500 end users. Ex. 7 at 2, 12.

for the aggregate fixed price of $10,386,800.[4] Ex. 8 at 6; Compl. ¶ 18. According to Telos, its pricing reflected its plan to purchase the licenses for all 17,000 end users from FedResults before the base period began. Compl. ¶ 19.

On September 29, 2022, the USAF awarded Telos the Delivery Order, which included the following statement: "The terms and conditions of Telos Quote No. 13734-092922 are incorporated herein and shall take precedence over any conflicting terms." Ex. 9 at 5. Telos's quote had directed the USAF to include that statement in the Delivery Order. Ex. 8 at 6. Among the terms and conditions of Telos's quote was the following provision:

> The Government has the option to renew this order beyond the Base Period. Provided the Government obtains such sufficient funds, the Government will exercise all renewal options via an order modification executed by or other writing of an authorized government representative. The rights of the Government to terminate shall apply to the entire delivery order, including any option periods thereof and not allow partial termination of the Software.

Compl. ¶ 22; Ex. 8 at 6. Telos alleges this provision, as incorporated in the Delivery Order, imposed a contractual obligation on the USAF to exercise the option years if Congress appropriated sufficient funds for performance. Compl. ¶ 22.

## II. Transactions Surrounding the Delivery Order

### A. The Master Purchase Agreement and Telos's Assignment to ePlus

Prior to being awarded the Delivery Order, Telos had executed on August 23, 2022, a "Master Purchase Agreement" with ePlus Government, Inc. ("ePlus") to "sell[], assign[] and transfer[]" to ePlus all of Telos's "right, title, and interest in" delivery order payments to be specified in subsequent schedules. Ex. 1 at 1; Compl. ¶ 2. Pursuant to that Master Purchase Agreement and after being awarded the Delivery Order at issue here, Telos assigned to ePlus via a schedule "all of [Telos's] rights and interest, but none

[4] While plaintiff's complaint lists $10,308,600 as the "aggregate fixed price," Compl. ¶ 18, the amounts listed on Telos's quote for each period add up to $10,386,800, Ex. 8 at 6.

of its obligations, in the [Delivery Order] Payments" from the USAF[5] and granted to ePlus "a perfected, first priority security interest in the [Delivery Order] and the [Delivery Order] Payments. . . ." Ex. 1 at 7; Compl. ¶ 4. In exchange, ePlus agreed to pay Telos $9,092,266.17. Ex. 1 at 8. This was in essence to finance Telos's initial expenses in exchange for all of the Delivery Order payments, which totaled over $10 million.[6] While the Master Purchase Agreement schedule is dated October 4, 2022, the schedule's attestation clause states that "this Schedule . . . shall be effective as of the date executed by [ePlus as] Buyer below," and ePlus appears to have executed the schedule on November 2, 2022. *Id.* at 9.

B. The Agency Agreement and Telos's Assignment to Wilmington Trust

At the time of Telos's assignment to ePlus, ePlus had a preexisting "Agency Agreement" with Wilmington Trust, National Association ("Wilmington Trust") that established Wilmington Trust as ePlus's "paying agent."[7] Compl. ¶ 6; Ex. 3 at 1. Under the Agency Agreement, Wilmington Trust "warrant[ed] that [it] is a bank or trust company authorized to conduct a trust business under the laws of any state or under Federal banking law" and agreed to "serve as assignee for any [ePlus] federal transactions pursuant to the Federal Assignment of Claims Act" and "sign such documents as are reasonably necessary for perfection" and those "later reasonably necessary to recover any funds due under such assigned federal transactions." Ex. 3 at 2. The Agency Agreement also provided that "[a]ll such documents shall

[5] In addition to specifically identifying the Delivery Order between Telos and the USAF, the schedule lists the following as the "[Delivery Order] Payments Assigned": "$750,000.00 due 10/30/22"; "$1,800,000.00 due 2/28/23"; "$3,000,000.00 due 2/28/24"; "$4,500,000.00 due 2/28/25." Ex. 1 at 9. While some discrepancy exists between these payment amounts and those listed in the Delivery Order, neither party points out nor relies on this fact in their arguments. *See* Ex. 9 at 5 (Delivery Order listing $1,895,600 as the total payment for the first option period; $3,095,600 as the total payment for the second option period; and $4,645,600 as the total payment for the third option period).

[6] *See supra* note 4.

[7] Based on plaintiff's representations at oral argument, Wilmington Trust's role as "paying agent" meant that it was to receive funds as a "trustee" for ePlus before "release[ing] those funds to [ePlus]." Oral Argument at 23:11, *Telos v. United States*, No. 25-2191 (Fed. Cl. Sept. 10, 2026).

be prepared by [ePlus], forwarded to [Wilmington Trust] for review with express written instructions to execute and deliver them." *Id.* at 2.

On October 4, 2022, Telos executed an "Instrument of Assignment" that stated that Telos "does hereby assign, set over, and transfer unto [Wilmington Trust], as Assignee, all of [Telos's] rights and interest to all moneys and/or payments due or to become due from the [USAF] or from any agency or department thereof accruing under the [Delivery Order]. . . ." Ex. 4 at 1. According to Telos, this assignment was made to Wilmington Trust in its capacity as ePlus's paying agent. Compl. ¶ 6. On the same day as the assignment, Wilmington Trust provided written notice of the assignment to the USAF contracting officer and disbursement office. *Id.*; Ex. 4 at 2.

C. ePlus's Assignment to BFNA and the Agency Agreement Schedule

On November 10, 2022, ePlus executed an "Assignment Agreement" with BFNA that identified Telos's Delivery Order with the USAF along with related documents[8] as the subject of assignment. Ex. 2 at 1; Compl. ¶ 5. Specifically, ePlus "agree[d] to assign to [BFNA] all right, title, and interest in the Contract payments . . . identified in Attachment 1 hereto and fully

---

[8] The relevant provision in the Assignment Agreement reads as follows:

> SUBJECT OF ASSIGNMENT: Solicitation/Contract/Order for Commercial Items Number FA877122F0109 dated September 29, 2022, issued by AFLCMC for use by US Air Force Maxwell Air Force Base ("User") to Telos Corporation ("Seller") pursuant to Contract No. N6600121A0026 ("Prime Contract"), including Telos Corporation Quote Number 13734-092922.40M.00 dated September 29, 2022 (collectively the "Contract"), and all other amendments, revisions, attachments, modifications, renewals and supplements thereto, and Schedule No. 1 dated October 4, 2022 issued pursuant to Master Purchase Agreement dated as of August 23, 2022, each between Assignor and Seller (as the same shall be amended, modified, supplemented and renewed from time to time in accordance therewith, together with all exhibits, schedules, annexes and other attachments hereto, and all other documents executed by Seller in connection therewith, collectively, the "Schedule")

Ex. 2 at 1.

described in the Schedule"[9] in exchange for $8,420,533.34. Ex. 2 at 1. Identified in Attachment 1 are the same payments the Master Purchase Agreement schedule lists as the Delivery Order payments corresponding to the three option periods.[10] *Id.* at 7. ePlus also agreed to "sell, transfer, convey and assign to [BFNA], its successors and assigns, all and every right, title and interest of [ePlus], whether now owned or hereafter acquired, in and to the Schedule, including without limitation all right, title and interest in the assets and the rights to receive the Contract payments; to direct any claims and/or appeals by [Telos] against [the USAF]; and to receive any proceeds from such claims and/or appeals." *Id.* at 1.

Pursuant to the Agency Agreement between ePlus and Wilmington Trust, ePlus also executed on November 10, 2022, a "Schedule" that acknowledged Wilmington Trust as ePlus's paying agent and ePlus's simultaneous assignment to BFNA. Ex. 5 at 1-2. Referring to the Delivery Order payments that ePlus assigned to BFNA, the Schedule states that "[a]ll such Payments shall be remitted to [BFNA]." *Id.* at 1. Telos alleges this provision meant that "any payments received by Wilmington Trust were to be remitted directly to BFNA, thereby establishing Wilmington Trust as paying agent for BFNA in addition to ePlus." Compl. ¶ 7.

III. Performance of the Base Period under the Delivery Order

On October 1, 2022, Telos delivered to the USAF the digital license keys required by the Delivery Order for the four-month base period. Compl. ¶ 45; Ex. 10 at 1. Each license key had a start date of September 30, 2022, and an end date of January 29, 2026.[11] Ex. 10 at 9-11. After delivering the

---

[9] The Assignment Agreement appears to use the term "Schedule" to refer to the Master Purchase Agreement schedule. Ex. 2 at 1.

[10] *See supra* note 5.

[11] Telos alleges the USAF knew or should have known that the license keys were activated for the full forty months, because the USAF had executed a Certificate of Acceptance, confirming delivery, inspection, and acceptance of the software, and had digitally signed a Material Inspection and Receiving Report, further confirming that the license keys were received in good condition. Compl. ¶ 48-51. However, because the Certificate of Acceptance is dated September 29, 2022, it is unclear how the USAF could have received, inspected, and accepted the license keys before their delivery on October 1, 2022. Ex. 11 at 1. Nonetheless, the Material Inspection and Receiving Report was digitally signed by the USAF on October 3, 2022. Ex. 12 at 1.

license keys to the USAF, Telos issued ePlus an invoice on October 27, 2022, seeking payment of $9,092,266.17. Compl. ¶ 54; Ex. 13 at 1. That figure was the amount ePlus had agreed to pay Telos under the Master Purchase Agreement schedule in exchange for Telos's assignment of the Delivery Order payments to ePlus. *See* Ex. 1 at 7-8. ePlus, in turn, instructed BFNA to wire Telos $9,092,266.17. Compl. ¶ 55; Ex. 14 at 1. It appears that ePlus had wired, or was going to wire, BFNA $671,732.83. *See* Ex. 14 at 1. This would have ensured that BFNA's out-of-pocket expenses were limited to $8,420,533.34, the amount that BFNA agreed to pay for ePlus's assignment of the Delivery Order payments to BFNA. *See* Ex. 14 at 1; Ex. 2 at 1. Plaintiff alleges that BFNA wired Telos $9,092,266.17 on or around November 10, 2022. Compl. ¶ 56. When the USAF paid Telos $750,000, Telos remitted the payment to ePlus on December 22, 2022. Compl. ¶ 57; Ex. 15 at 1.

IV. The Option Periods under the Delivery Order

On January 25, 2023, four days before the base period was to expire, Alexia "Paige" Zukowski, a contract specialist from the USAF's Logistics Support Division, spoke with Andrew Hoosen, Telos's Director of Intelligent Automation and AI Sales, about the USAF's efforts to obtain funding for the first option period. Compl. ¶ 58; Ex. 16 at 1-3. In an email, acknowledging their conversation, Mr. Hoosen noted as a "potential course of action" that UiPath offered a fourteen-day "grace period with their licenses." Ex. 16 at 1-2. According to Mr. Hoosen's email, UiPath's fourteen-day grace period would give the USAF an additional fourteen days after the base period ended to pay for the first option period, while ensuring the USAF's use of the software would not be disrupted. *Id.* at 2.

On January 27, 2023, the USAF contracting officer sent Telos a memorandum, accepting the fourteen-day grace period.[12] Ex. 17 at 3. While the memorandum also notified Telos of the USAF's intent to exercise the first option period, the memorandum stated that "[e]xercising this option is contingent upon securing the requisite funding required for the option period." *Id.* at 3.

---

[12] Although the memorandum refers to FAR 52.217-9 and Telos returned to the USAF a signed notice of intent, Ex. 17 at 1-4, Telos contends that the memorandum did not alter the term of the base period or any of the option periods and that any attempt to do so by the memorandum was not "binding" as there was no additional consideration, Compl. ¶ 61.

On February 9, 2023, before the fourteen-day grace period had ended, the USAF notified Telos that the USAF would not be exercising the first option period. Ex. 20 at 1. The notification cited FAR 17.207(c)(1) and stated that "the government will not be able to secure the requisite funding required for the option period."[13] *Id.* at 1. Still, on February 1, 2024, Telos delivered to the USAF the license keys for the second option period. Compl. ¶ 78; Ex. 21 at 2-8.

V. Procedural History

In August 2024, Telos submitted a certified claim to the USAF, seeking $9,350,000.[14] Compl. ¶ 79; Ex. 6 at 1. The Contracting Officer ("CO") denied the claim on May 29, 2025. Ex. 6 at 6. In denying the claim, the CO determined that the USAF did not breach the Delivery Order because the Delivery Order did not and could not obligate the USAF to exercise any options that were "not yet funded with annual appropriations at the time of the order." *Id.* at 2-3. As a result, the CO rejected Telos's corresponding claims of anticipatory repudiation, abuse of discretion, breach of covenant of good faith and fair dealing, cardinal change, constructive change, and equitable estoppel. *Id.* at 3-6.

The CO also found that the USAF did not constructively exercise the first option period because the USAF had been unable to "secure the total funding needed for" that option period. *Id.* at 3-4. Nevertheless, because the CO found that the USAF had continued to use Telos's UiPath license keys after the base period had expired, the CO stated that "in accordance with FAR 33.211, the Government will compensate Telos in the amount of $72,707.95,

[13] In line with Telos's argument that the Delivery Order obligated the USAF to exercise the option periods if Congress appropriated sufficient funding, Telos points to legislation passed by Congress on September 30, 2022, and December 16, 2022, to fund the Department of Defense ("DoD") and the USAF, as evidence that Congress had appropriated sufficient funding for the first option period. Compl. ¶ 32-35. Telos similarly points to legislation passed by Congress on November 17, 2023, September 26, 2024, and December 23, 2024, to fund the DoD and the USAF, to show that Congress had appropriated sufficient funding for the second and third option periods. Compl. ¶ 37-43.

[14] This amount is the total sum of the Delivery Order payments that ePlus assigned to BFNA. *See* Ex. 2 at 7.

for the acceptance of the 14-day grace period [and] use of the UiPath software from [January 30, 2023] to [February 12, 2023]." *Id.* at 2, 6.

On December 31, 2025, Telos filed its complaint here, claiming that the USAF breached the Delivery Order by failing to exercise the three option periods.[15] Telos also alleges the four following theories regarding the USAF's failure to exercise the option periods: (1) breach of the covenant of good faith and fair dealing, (2) cardinal change, (3) constructive change, and (4) constructive termination for convenience. In the alternative, Telos alleges the USAF constructively exercised all three option periods and is equitably estopped from asserting that it did not limit its discretion to exercise the three option periods. The complaint states repeatedly that Telos brings the claim on behalf of its "funding stakeholder" BFNA. Pls.' Compl. ¶ 158,

The government has moved to dismiss Telos's complaint under Rule 12(b)(1) and (b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). It argues this court should dismiss Telos's complaint for lack of subject matter jurisdiction because the assignments by Telos to ePlus and ePlus to BFNA violated the Anti-Assignment Act. Alternatively, the government argues this court should dismiss Telos's complaint for failure to state a claim upon which relief can be granted because the Anti-Deficiency Act bars the government from contractually obligating itself to exercise option periods for which Congress has yet to appropriate funds.

Because we agree with the government that the assignments to ePlus and BFNA violated the Anti-Assignment Act, we dismiss this case for lack of subject matter jurisdiction without reaching the merits of Telos's claim.

## DISCUSSION

Subject matter jurisdiction is a "threshold matter" that must be resolved before this court can consider a case's merits. *Golden v. United States*, 137 Fed. Cl. 155, 168 (2018). The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence, though we assume in deciding a 12(b)(1) motion that the undisputed facts alleged in the complaint are true and draw reasonable inferences in favor of the plaintiff. *E&I Global Energy Servs. v. United States*, 144 Fed. Cl. 508, 512 (2019). We may also consider material outside of the complaint to determine jurisdiction. *Id.* at 513.

---

[15] Telos alleges it is bringing a "sponsored pass-through claim" on behalf of BFNA. Compl. at 1.

Under the CDA, this court has jurisdiction to review *de novo* a contracting officer's final decision. 41 U.S.C. § 7104(b). When the CDA is implicated, the Tucker Act grants this court "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41 . . . ." 28 U.S.C. § 1491(a)(2). "The requirements of the CDA and other contracting statutes 'operate as limits upon this waiver of sovereign immunity.'" *Am. Gov't Props. v. United States*, 118 Fed. Cl. 61, 66 (2014) (quoting *Inter-Coastal Xpress, Inc. v. United States*, 296 F.3d 1357, 1365 (Fed. Cir. 2002)). Therefore, if a plaintiff, in bringing a CDA claim, fails to "meet a requirement of the [CDA] or otherwise violate[s] a requisite to triggering access to the court through a contracting statute, jurisdiction does not attach." *See id.* at 66.

The Anti-Assignment Act, which consists of 41 U.S.C. § 6305 and 31 U.S.C. §3727, generally bars the assignment of government contracts and claims against the United States. The purpose is "to protect the Government from secret assignment arrangements, to prevent possible multiple claims and to make unnecessary the investigation of alleged assignments." *Am. Nat'l. Bank & Trust Co. of Chicago v. United States*, 22 Cl. Ct. 7, 18 (1990).

Although both parties have referred to 31 U.S.C. §3727 throughout their arguments, for our purposes, we need only consider 41 U.S.C. § 6305, which is clearly implicated by the assignments in this case.[16] 41 U.S.C. § 6305 reads in part:

> **(a) General prohibition on transfer of contracts.** The party to whom the Federal Government gives a contract or order may not transfer the contract or order, or any interest in the contract or order, to another party. A purported transfer in violation of this subsection annuls the contract or order so far as the Federal Government is concerned, except that all rights of action for breach of contract are reserved to the Federal Government.
>
> **(b) Assignment.**
>
> > **(1) In general.** Notwithstanding subsection (a) and in accordance with the requirements of this subsection, amounts due from the Federal Government under a contract

[16] Telos's Master Purchase Agreement with ePlus and ePlus's Assignment Agreement with BFNA contain language that implicates 31 U.S.C. § 3727, but we need not examine whether those agreements violate 31 U.S.C. § 3727 because they violate 41 U.S.C. § 6305.

> may be assigned to a bank, trust company, Federal lending agency, or other financing institution.
>
> . . . .
>
> **(5) Single assignment.** Unless otherwise expressly permitted by the contract, an assignment under this subsection may not be made to more than one party or be subject to further assignment, except that assignment may be made to one party as agent or trustee for 2 or more parties participating in the financing.
>
> **(6) Written notice.** The assignee of an assignment under this subsection shall file written notice of the assignment and a true copy of the instrument of assignment with—
>
> **(A)** the contracting officer or head of the officer's department or agency;
>
> **(B)** the surety on any bond connected with the contract; and
>
> **(C)** the disbursing officer, if any, designated in the contract to make payment.

*Id.* § 6305(a)-(b)(6).

41 U.S.C. § 6305(a) thus prohibits a "party to whom the Federal Government gives a contract or order" from "transfer[ring] . . . any interest in the contract, or order, to another party."

To summarize the transactions outlined above, there were three assignments of Telos's right to payment from the USAF: Telos's assignment to Wilmington Trust on October 4, 2022; Telos's assignment to ePlus on November 2, 2022;[17] and ePlus's assignment to BFNA on November 10,

[17] Under standard contract law, an assignment generally does not become effective until the assignee manifests assent. *See* Restatement (Second) of Contracts § 342. While the schedule by which Telos assigned its rights to ePlus is dated October 4, 2022, ePlus did not execute the schedule until November 2, 2022, twenty-nine days after Telos assigned its rights to Wilmington Trust on October 4, 2022. Ex. 1 at 1, 9; Ex. 4 at 1. Furthermore,

2022. On their face, these assignments purported to transfer interests in Telos's Delivery Order with the USAF.[18] Because of 41 U.S.C. § 6305(a)'s general prohibition against assignment, these assignments presumptively triggered the penalty for violating that prohibition, which is annulment of "the contract or order so far as the Federal Government is concerned." *Id.* The only way Telos's Delivery Order with the USAF was preserved is if each assignment satisfied the exception set out in 41 U.S.C. § 6305(b)(1).

The exception in 41 U.S.C. § 6305(b)(1) permits "amounts due from the Federal Government under a contract [to] be assigned to a bank, trust company, Federal lending agency, or other financing institution." *Id.* This exception, however, is "strictly construed, and the contractor must meet the requirements of [41 U.S.C. § 6305(b)] to gain the benefit of the exception." *United Cal. Discount Corp. v. United States*, 19 Cl. Ct. 504, 507 (1990). One such requirement is that "[t]he assignee of an assignment under this subsection" file "written notice of the assignment and a true copy of the instrument of assignment with" the contracting officer or agency head, the surety on any bond connected with the contract, and the disbursing officer. 41 U.S.C. § 6305(b)(6).

The only notice of assignment in the record is that of October 4, 2022, from Wilmington Trust to the USAF regarding Telos's assignment to Wilmington Trust. Telos does not allege nor does the record contain any evidence that ePlus filed a written notice of Telos's assignment to ePlus or a true copy of the instrument of the assignment with the contracting officer, the head of the USAF, or the disbursing officer designated in the contract to make

---

the schedule itself states that it became "effective as of the date executed by [ePlus]." Ex. 1 at 9.

[18] *See* Ex. 4 at 1 (Instrument of Assignment stating that "[Telos] does hereby assign, set over, and transfer unto [Wilmington Trust], as Assignee, all of [Telos's] rights and interest to all moneys and/or payments due or to become due from the [USAF] or from any agency or department thereof accruing under the [Delivery Order]. . . ."); Ex. 1 at 7 (Master Purchase Agreement schedule stating that "[Telos] hereby (i) assigns and transfers to [ePlus] all of [Telos's] rights and interest, but none of its obligations, in the [Delivery Order] Payments; and (ii) grants to [ePlus] a perfected, first priority security interest in the [Delivery Order] and the [Delivery Order] Payments. . . ."); Ex. 2 at 1 (Assignment Agreement stating that "[ePlus] agrees to assign to [BFNA] all right, title, and interest in the Contract payments . . . identified in Attachment 1 hereto and fully described in the Schedule.").

payment. The same is true of ePlus's subsequent assignment to BFNA. Telos's assignment to ePlus and ePlus's assignment to BFNA, therefore, violated 41 U.S.C. § 6305(b)'s notice requirement. Because that means neither assignment met the requirements of 41 U.S.C. § 6305(b)(1)'s exception, both assignments were made in violation of 41 U.S.C. § 6305(a). Because a purported transfer in violation of 41 U.S.C. § 6305(a) annuls a government contract or order so far as the government is concerned, Telos's assignment to ePlus and ePlus's assignment to BFNA annulled Telos's Delivery Order with the USAF.[19]

Even if there had been notice of Telos's assignment to ePlus and ePlus's assignment to BFNA, moreover, those assignments failed to meet 41 U.S.C. § 6305(b)(5)'s single assignment requirement.[20] 41 U.S.C. § 6305(b)(5) states that "[u]nless otherwise expressly permitted by the contract, an assignment under this subsection may not be made to more than one party or be subject to further assignment, except that assignment may be

---

[19] At oral argument, plaintiff argued that "a defective assignment under [41 U.S.C. §] 6305(b) . . . does not give rise to annulment of the contract" but "just invalidates the effectiveness of any assignment as against the government." Oral Argument at 1:21:43, *Telos v. United States*, No. 25-2191 (Fed. Cl. Sept. 10, 2026). This court, however, has held otherwise. *See Am. Gov't Props.*, 118 Fed. Cl. at 66, 68-69 (if an "assignment violates [41 U.S.C. § 6305(b)] . . . any claim against the contract is annulled at the government's option."). Moreover, even though plaintiff argued that "it would be a mistake . . . to co-opt . . . the remedy of annulment [in subpart (a)] as being applicable to a mistake or error that occurs under subpart (b)," plaintiff acknowledged that 41 U.S.C. § 6305(b) is an exception to 41 U.S.C. § 6305(a). Oral Argument at 1:22:04, *Telos v. United States*, No. 25-2191 (Fed. Cl. Sept. 10, 2026). Accordingly, when an assignment purports to transfer an interest in a contract but fails to meet the requirements of 41 U.S.C. § 6305(b)'s exception, the assignment violates 41 U.S.C. § 6305(a)'s prohibition against assignment. The penalty for violating 41 U.S.C. § 6305(a)'s prohibition against assignment is annulment of the contract so far as the government is concerned.

[20] Although the government argues that Telos also violated 41 U.S.C. § 6305(b)(1) by assigning more than "amounts due" to BFNA, such as "certain decision-making authority to BFNA," the government cites Exhibit 2, which is ePlus's assignment to BFNA. Def.'s Reply at 5; Ex. 2. While ePlus assigned to the BFNA the right to "direct any claims and/or appeals by [Telos] against [the USAF]," that language implicates 31 U.S.C. § 3727, which we have decided is unnecessary to examine here. Ex. 2 at 1.

made to one party as agent or trustee for 2 or more parties participating in the financing." The Federal Acquisition Regulation ("FAR") part 52.232-23 states:

> (a) The Contractor, under the Assignment of Claims Act, as amended, 31 U.S.C. 3727, 41 U.S.C. 6305 (hereafter referred to as the Act), may assign its rights to be paid amounts due or to become due as a result of the performance of this contract to a bank, trust company, or other financing institution, including any Federal lending agency. **The assignee under such an assignment may thereafter further assign or reassign its right under the original assignment to any type of financing institution described in the preceding sentence.**

48 C.F.R. § 52.232-23(a) (emphasis added). In light of FAR 52.232-23, the clause in 41 U.S.C. § 6305(b)(5) that states "except that assignment may be made to one party as agent or trustee for 2 or more parties participating in the financing" is only an exception to the Act's rule against further assignment. As the Court of Claims stated when interpreting the same exception in the Assignment of Claims Act of 1940, the exception in 41 U.S.C. § 6305(b) "permits an assignment to one (and only one) finance institution . . . but provides that that one may be a trustee 'for two or more parties participating in such financing.'" *Chelsea Factors, Inc. v. United States*, 181 F. Supp. 685, 690 (Ct. Cl. 1960).

Because Telos argues that Wilmington Trust was the one party to which it assigned its right to payment under the Delivery Order as agent or trustee for ePlus and BFNA, Wilmington Trust was the only party who could have further assigned its rights under 41 § 6305(b).[21] Those are not the facts of this case, however. Instead, Telos further assigned the Delivery Order payments to ePlus, which further assigned the Delivery Order payments to BFNA. These further assignments violated 41 § 6305(b)(5) because neither involved Wilmington Trust as the assignor. Consequently, Telos's assignment to ePlus and ePlus's subsequent assignment to BFNA did not meet the requirements of 41 U.S.C. § 6305(b)(1)'s exception but violated 41 U.S.C. §6305(a)'s prohibition against assignment, thereby annulling the Delivery Order between Telos and the USAF.

---

[21] Even if Telos were to argue that it had assigned its right to payment to ePlus as agent or trustee for BFNA, that would mean Telos's assignment to Wilmington Trust violated 41 U.S.C. § 6305(b)(5)'s "one party as agent or trustee" requirement.

Although Telos contends that its assignment to ePlus and ePlus's assignment to BFNA were "lower tier" assignments permitted under 41 U.S.C. § 6305(b)(5) and not subject to 41 U.S.C. § 6305(b)(6)'s notice requirement, the case Telos relies on for that contention is inapposite. *See* Pl.'s Resp. at 11 (citing *Chelsea Factors, Inc.*, 181 F. Supp. 685); Oral Argument at 19:30, 30:49 *Telos v. United States*, No. 25-2191 (Fed. Cl. Sept. 10, 2026). Telos describes *Chelsea Factors, Inc. v. United States* as a case in which the Court of Claims "approv[ed] a similar financing structure involving multiple parties," but the facts of the case, as we explain below, are distinguishable from the case at bar. Pl.'s Resp. at 11.

In *Chelsea Factors, Inc.*, Chelsea Factors, Inc. ("Chelsea Factors") claimed that it was the assignee of the amounts due under two government contracts. 181 F. Supp. at 687. Chelsea Factors was not a party to the government contracts but had funded the contractor's performance under the contracts, partly by taking out loans from the National City Bank of New York ("Bank"). *Id.* at 687-88. In exchange for Chelsea Factors' funding, the contractor had executed two assignments of the contracts that named the Bank as the assignee of the amounts due under the government contract along with a letter that instructed the Bank to give Chelsea Factors any funds that remained after payment of the Bank's loans to Chelsea Factors. *Id.* The Bank, as required by the Assignment of Claims Act of 1940, had sent notices of the assignments to the government. *Id.* at 688. Determining that this arrangement had made the Bank a trustee of the assignment for Chelsea Factors, especially as the Bank later assigned its rights to Chelsea Factors, the Court of Claims held that Chelsea Factors could recover from the government as an assignee. *Id.* at 689-90, 92, 94. Despite the government's argument that Chelsea Factors had failed to provide notice to the government in violation of the Assignment of Claims Act, the court held that the Bank's notice had satisfied the Assignment of Claims Act's notice requirement.[22] *Id.* at 689-90.

---

[22] We note that the majority opinion in *Chelsea Factors, Inc.* largely fails to explain why Chelsea Factors' lack of notice did not run afoul of the Assignment of Claims Act of 1940. This is partly because the Bank did not reassign its rights to Chelsea Factors until after Chelsea Factors had filed suit. *Chelsea Factors, Inc.*, 181 F. Supp. at 692. Consequently, while the court held that Chelsea Factors' standing to sue was founded upon the Bank's eventual reassignments, *id.* at 692, the court's holding regarding notice was based on Chelsea Factors' not owing notice at the time, presumably because in the court's view, no legal rights had yet passed to Chelsea Factors, *see id.* at 690, 692. In this regard, *Chelsea Factors, Inc.* is a *sui generis* case.

Here, the main distinction is that, unlike the contractor who only assigned its rights to one entity in *Chelsea Factors, Inc.*, Telos assigned its right to payment under the Delivery Order to two: ePlus and Wilmington Trust. Thus, while the Court of Claims in *Chelsea Factors, Inc.* held that the Assignment of Claims Act required only the Bank to provide notice of the contractor's assignment to the Bank, that is because it was the contractor's only assignment. Applying the same logic to this case, 41 U.S.C. § 6305(b)(6) required both Wilmington Trust and ePlus to provide notice of their assignments with Telos because Telos assigned its right to payment as contractor to them both.

Another reason *Chelsea Factors, Inc.* does not support Telos's position is that it was ePlus, and not Wilmington Trust, who made the assignment to BFNA. Although the Bank in *Chelsea Factors, Inc.* was not required to provide notice of its assignment to Chelsea Factors, the Bank was the assignee of an assignment that met the requirements of the Assignment of Claims Act. While Wilmington Trust may have been the assignee of an assignment that met the requirements of 41 U.S.C. § 6305(b),[23] Wilmington Trust did not assign anything to BFNA. And while ePlus did assign payments under the Delivery Order to BFNA, it was not, as explained above, the assignee of an assignment that met the notice requirement of 41 U.S.C. § 6305(b)(6).[24]

Plaintiff, in an effort avoid the foregoing conclusions, argued for the first time at oral argument that Telos's assignment to ePlus and ePlus's subsequent assignment to BFNA were not assignments but merely agreements which did not assign any interest in the Delivery Order itself but

---

[23] It is unclear whether Wilmington Trust financed Telos's performance under the Delivery Order, even indirectly. This is significant as cases decided by the Court of Claims suggest that an assignment is not valid under the Anti-Assignment Act unless the assignee participates in the financing. *See, e.g.*, *Am. Nat'l Bank & Trust Co. v. United States*, 22 Cl. Ct. 7, 16 (1990) (finding no valid assignment under the Anti-Assignment Act because the purported assignee did not loan or make any funds available for the performance of the government contract).

[24] It is also unclear whether Telos's assignment to ePlus would fall within 41 U.S.C. § 6305(b)(1)'s exception because the parties have taken no definitive position on whether ePlus would qualify as "a bank, trust company, Federal lending agency, or other financing institution" under 41 U.S.C. § 6305(b)(1).

rather obligated Telos to transfer to ePlus and BFNA any payments that Telos received from the USAF. *See* Oral Argument at 27:02, 29:17, *Telos v. United States*, No. 25-2191 (Fed. Cl. Sept. 10, 2026). In other words, no rights enforceable by the transferees, vis-à-vis the USAF, were passed on.

While we think plaintiff's argument strains the plain language of those agreements, we conclude that, if they were not assignments of interest in the Delivery Order, Telos lacks standing to maintain this suit against the government. The Court of Federal Claims, "though an Article I court, applies the same standing requirements enforced by other federal courts created under Article III." *Starr Int'l Co., Inc. v. United States*, 856 F.3d 953, 964 (Fed. Cir. 2017) (quoting *Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003)). The party invoking federal jurisdiction "bears the burden of showing standing." *Id.* To show Article III standing, a plaintiff must assert "(1) an 'actual or imminent' injury-in-fact that is 'concrete and particularized'; (2) a 'causal connection' between the injury and the conduct complained of'; and (3) likely[] . . . redress[ability] by a favorable decision.'" *Id.* at 964 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

It is important to address the fact that Telos alleges it is bringing a pass-through claim on behalf of BFNA. A "pass-through claim is one in which a prime contractor uses its privity with the United States to sponsor a subcontractor's claim for damages the subcontractor sustained as a result of an alleged breach of contract by the United States." *Irwin County v. United States*, 170 Fed. Cl. 355, 365 (2024). A "subcontractor," in turn, is "someone who is awarded a portion of an existing contract by a contractor." BLACK'S LAW DICTIONARY (12th ed. 2024). Although Telos has referred to BFNA as its "funding stakeholder," it has never alleged that BFNA was a subcontractor. Because there is no allegation that BFNA was awarded a portion of the Delivery Order,[25] BFNA is not a subcontractor whose claims Telos can sponsor. Nor did BFNA gain any contractual rights via assignment, according to Telos.

More fundamentally, Telos cannot assert a claim of its own. If, as plaintiff alleges, Telos's transfer to ePlus and ePlus's transfer to BFNA only

[25] Although plaintiff at oral argument characterized its transaction with ePlus as a "subcontract," Oral Argument at 20:13, *Telos v. United States*, No. 25-2191 (Fed. Cl. Sept. 10, 2026), we do not view that transaction or ePlus's transaction with BFNA as a "subcontract" in any meaningful sense of the term.

conveyed the right to receive from Telos any payments that Telos received from the USAF, then Telos has met that obligation.[26] Telos, therefore, has no potential liability to BFNA to assert as an injury-in-fact under plaintiff's view of these transactions. And because plaintiff alleges Telos has validly assigned all of its rights and interest in the Delivery Order to Wilmington Trust, Telos also cannot assert the government's alleged breach as an injury-in-fact. Accordingly, Telos has not shown it has standing to sue the government.

It is unnecessary therefore to address defendant's assertion that the claim is inconsistent with the Anti-Deficiency Act.

CONCLUSION

Because Telos's assignment to ePlus and ePlus's assignment to BFNA annulled the Delivery Order between Telos and the USAF, the Delivery Order cannot form the basis of Telos's pass-through claim against the United States. Defendant's motion to dismiss for lack of jurisdiction is hereby granted. The clerk of court is directed to dismiss the complaint and to enter judgment accordingly.

s/Eric G. Bruggink
ERIC G. BRUGGINK
Senior Judge

[26] Because "the entire payment [that Telos received from the USAF] was remitted to ePlus by Telos," Telos did not breach its obligation to ePlus under plaintiff's view of Telos's assignment to ePlus. Oral Argument at 36:07, *Telos v. United States*, No. 25-2191 (Fed. Cl. Sept. 10, 2026). Likewise, Telos has not breached its obligation to BFNA under plaintiff's view of ePlus's assignment to BFNA because Telos has yet to receive any payments from the USAF to which BFNA could be entitled.